Kervin OCCEAN, Plaintiff,

v.

Kathleen KEARNEY, in her official capacity as Secretary of the Florida Department of Children and Family Services and Phyllis F. Scott, in her official capacity as District Administrator, District Ten, of the Florida Department of Children and Family Services, Defendants.

No. 00–6461–CIV.

United States District Court, S.D. Florida.

Aug. 9, 2000.

Alan I. Mishael, Alan I. Mishael, P.A., Miami Beach, FL, Bernard Perlmutter, Coral Gables, FL, for Plaintiff.

Stephanie S. Curd, Office of the Attorney General, Civil Division, Ft. Lauderdale, FL, for Defendants.

***ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT***

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendants', Kathleen Kearney and Phyllis F. Scott, Motion to Dismiss Plaintiff's Amended Complaint [DE 25]. The Court has carefully considered the motion, has heard the argument of counsel at a hearing held on August 4, 2000, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff brings these claims for injunctive and declaratory relief under Title 42 U.S.C. Section 1983, alleging that his substantive due process and procedural due process rights were violated when Defendants, in their official capacities as executives in a state agency, the Florida Department of Children and Family Services (hereinafter "DCF"), ended Plaintiff's foster care benefits when Plaintiff reached the age of eighteen without previously affording Plaintiff notice and an opportunity to be heard. Plaintiff additionally contends that he was unlawfully deprived of legal assistance in obtaining a permanent resident visa from the U.S. Immigration and Naturalization Service (hereinafter "INS"). Plaintiff further states that his rights to notice and an opportunity to be heard through a case review system under the Child Welfare Act, 42 U.S.C. Section 675(5)(C), were also violated.

The Amended Complaint alleges that Plaintiff, now nineteen years old, was born in the Bahamas and arrived thereafter in the United States with his mother. In March 1992, DCF removed Plaintiff from his parents' custody and placed him in foster care because he and his siblings were being left in their home inappropri-ately. On August 20, 1994, DCF transferred Plaintiff to Mel Blount Youth Home of Georgia, a behavioral modification facility, contracted to the Florida DCF to provide 24 hour, seven day a week care and education to juveniles under DCF control. In March 1995, the juvenile court in Fort Lauderdale entered an order providing that if DCF was to change the Plaintiff's placement, it shall present to the court a written report outlining what treatment plan is proposed for the Plaintiff and DCF's basis for such a recommendation. In June, 1995, the juvenile court changed the case plan goal for Plaintiff to long term foster care, and Plaintiff was given an Independent Living Skills Assessment to complete. Plaintiff stated that he wished to get his GED, attend technical school, and secure employment. According to the Amended Complaint, on May 6, 1997, Plaintiff met the eligibility criteria for receipt of Special Immigrant Status from the INS.

The Amended Complaint further alleges that according to the reports and recommendations to the juvenile court and from the Mel Blount facility's files, Plaintiff seemed to be making significant progress in this program and was working towards his GED. One month before his benefits were terminated, DCF recommended that Plaintiff continue individual and group counseling and explore vocational options for positive transition from youth home into the community. Furthermore, Plaintiff expressed his desire to remain in the youth home until he obtained his GED. On December 26, 1998, Plaintiff's eighteenth birthday, without any notice or an opportunity to be heard, his case was closed by DCF. Plaintiff was told on March 16, 1999 to immediately pack and leave on the next bus to Fort Lauderdale with only a few of his belonging and fifty dollars. Upon arrival in Fort Lauderdale, Plaintiff was unable to work because he never received legal immigration status from INS while in custody of the DCF nor his GED. While in South Florida, Plaintiff was arrested and

incarcerated. Before his release from state custody, INS placed a hold on Plaintiff and he was transferred to an INS contract facility where he awaits deportation.[1]

Defendants move to dismiss the Amended Complaint, asserting that Plaintiff's claim stating injunctive and declaratory relief is in actuality a claim regarding past state actions and therefore barred by the Eleventh Amendment. Alternatively, Defendants allege that Plaintiff has failed to state a cause of action under 42 U.S.C. Section 1983 because Plaintiff has no substantive due process right to continued foster care benefits nor to public assistance in obtaining a green card after reaching the age of eighteen. Defendants also argue Plaintiff has failed to allege a property right to which he is entitled to procedural due process, since benefits after age 18 are within the discretion of the DCF. Finally, Defendants argue that there is no private right of action for violations of the federal Child Welfare Act.

## II. DISCUSSION

In its Motion to Dismiss, the Defendants assert that Plaintiff's Amended Complaint should be dismissed for failure to state a claim. It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F.2d 332, 334–336 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir.1967)). Taking Plaintiff's allegations to be true, the Court finds that only Plaintiff's substantive due process claim is insufficient to withstand Defendants' Motion to Dismiss for failure to state a claim.

### A. The Eleventh Amendment Does Not Bar Plaintiff's Claim

 The Eleventh Amendment bars suits against a state by its own citizens, as well as citizens of another state. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). An exception to the Eleventh Amendment exists when an individual seeks prospective relief against a state official for ongoing violations of federal law. *Sandoval v. Hagan*, 197 F.3d 484, 492 (11th Cir.1999)(citing *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Plaintiff alleges in his Amended Complaint that he was and continues to be entitled to benefits that were wrongfully terminated and that because he wants those benefits reinstated, he is seeking prospective relief. Defendants, however, allege that the relief sought by Plaintiff is an attempt to cause the expenditure of state funds for services for past harm and therefore the claim is barred. *See Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As Plaintiff correctly states, *Edelman* dealt with a monetary award of retroactive benefits which is distinguishable from this case. *Edelman* further states that the Eleventh Amendment does not bar the use of state funds as a necessary consequence of compliance in the future with a substantive federal question determination, but rather it bars compensation for past wrongdoings. *Id.* In this case, if Plaintiff has otherwise stated a claim (see below), the relief he seeks is prospective in that he wishes reinstatement to the GED program and assistance in obtaining legal immigration status.[2]

---

1. Plaintiff's counsel represented to the Court at the hearing in this case on August 4 that recently the INS had informed him that the Bahamas had refused the return of Plaintiff. On August 7, 2000, Plaintiff's counsel filed a Notice of Plaintiff's Release from Detention, indicating that Plaintiff has been released from INS custody.

2. Plaintiff represented to the Court at the hearing that the Florida Statute that allows

## B. Substantive Due Process Claim

■ Defendant argues that Plaintiff has no substantive due process claim because the continuance of foster care benefits after the age of eighteen and the assistance in obtaining a green card are not the type of liberty or property interest traditionally afforded due process. Defendants allege that the liberty interests the Plaintiff asserts are not those that are "objectively, deeply rooted in this Nations's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Due Process Clause does not obligate states to provide its citizens with substantive services, even if those services are necessary to secure citizens' life, liberty, or property interest. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, a State owes a duty under the Due Process Clause to take care of those who have already been deprived of their liberty. *See Collins v. Harker Heights*, 503 U.S. 115, 127, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

The United States District Court for the Eleventh Circuit has held that "substantive rights created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' " *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)(Powell, J., concurring)). The instant case, while not exactly a tort law case, also involves state based rights to continued foster care benefits after the age of 18.

When a person is institutionalized and wholly dependant on the state, a special relationship is created that requires a certain minimal standard of care. *Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In *Youngberg,* the Supreme Court held that the state was under a duty to provide respondent, a mentally retarded individual involuntarily committed to a state institution, with such training as an appropriate professional would consider reasonable to ensure safety and to facilitate his ability to function free from bodily restraint. *Id.* at 324, 102 S.Ct. 2452. The United States Court of Appeals for the Second Circuit has extended the meaning of *Youngberg* to children who are the responsibility of the state. *See Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1245–46 (2d Cir. 1984).

Defendants argue that Plaintiff has no substantive due process right to continued foster care benefits or assistance in obtaining a green card because no special relationship was created between Plaintiff and Defendants, and Plaintiff's claim simply does not rise to the level of a fundamental right secured by the Constitution. In the case at bar, Plaintiff argues Defendants accepted the responsibility of providing Plaintiff a residential placement in which he would be prepared to enter the adult world, thereby creating a special relationship, but instead abandoned the Plaintiff without a GED and without the legal ability to work because the Defendants did not obtain legal immigration status for Plaintiff while in foster care. Plaintiff, therefore, argues that Defendants deprived Plaintiff of his federal liberty interest in a humane and decent existence as a foster child in the care of the state, by not providing him with continued benefits in the form of participation in a GED program and legal immigration status.[3] However, if

---

DCF to continue benefits to qualified foster children through age 21 was recently amended to extend such discretionary benefits through age 23. Plaintiff will turn 20 in December, 2000.

**3.** Florida Statutes Section 409.145(a) authorizes the DCF to continue to provide the services of the children's foster care program to individuals 18 to 21 years of age who are enrolled in a program to obtain a high school

such a special relationship existed, when Plaintiff turned 18, such special relationship terminated for purposes of a substantive due process analysis.[4] Moreover, Plaintiff is in INS custody due to his committing a crime while he was 18 years old and no longer in DCF care. Plaintiff's own intervening cause leads this Court to concludes that no substantive due process violation occurred in this case.

Ultimately, the Court is left with a claim that simply does not rise to the level of a fundamental right protected by the Due Process Clause of the Constitution. Even if Defendants' conduct in summarily terminating Plaintiff's foster care benefits upon turning age 18 was arbitrary and capricious, this Court concludes that such post-age 18 foster care benefits are not a fundamental right that merits protection under the substantive due process clause.

### C. Plaintiff Has Stated A Procedural Due Process Claim

 The Court reaches a different conclusion as to Plaintiff's procedural due process claim. Defendant alleges that Plaintiff has no property right in continued foster care benefits and therefore, has failed to state a state procedural due process claim. There are two questions in the analysis of a procedural due process claim: first, did the plaintiff have a property interest of which he was deprived by state action, and if so, did the plaintiff receive sufficient process regarding that deprivation. *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d 287 (1970). Plaintiff alleges that he has a property interest in securing legal immigration status through the assistance of DCF, and in continued foster care as pro-

vided by Section 409.165(4) of the Florida Statutes. Plaintiff further alleges that once he turned eighteen he was entitled to the benefits until the age of twenty-one, that Defendants provided Plaintiff a plan calling for him to remain in foster care through May 31, 1999, and that Defendants violated the juvenile court judge's prohibition on terminating Plaintiff's existing foster placement without a court order. Finally, Plaintiff argues that the Florida Administrative Codes provides a procedure to be followed for mandatory administrative review, including notice of the conference, for children reaching age 18 but eligible for continued foster care benefits. See Florida Administrative Code Sections 65C–13.019 and 65C–16.003.

Defendants argue that Plaintiff's attainment of age 18 automatically terminates any property rights held by Plaintiff to continued benefits. Once reaching this "magic age," Defendants argue that Plaintiff's property rights ended, since Florida law allows DCF the discretion to continue benefits. However, the Defendants conceded at oral argument that there is an issue as to whether they failed to provide Plaintiff, prior to his turning 18, the assistance mandated by the Florida Administrative Code regarding aid in obtaining legal immigration status. Plaintiff also alleges that he never received a hearing or any type of process informing him of his denial of the extended foster care benefits.

 When limitations exist on agency discretion to terminate or extend benefits, procedural due process must be afforded. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Tefel v. Reno,* 180 F.3d 1286, 1300 (11th Cir.1999), *cert. denied,* —— U.S.

equivalency diploma. In 2000, the statute was apparently amended to allow for such benefits until the age of 23.

4. Thus, the Court distinguishes the line of cases in the Eleventh Circuit and the Supreme Court finding possible substantive due process violations when harm is caused to the child when in foster care. See, e.g. *DeShaney*

*v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989); *Powell v. Georgia Dept. of Human Resources,* 114 F.3d 1074, 1079–1080 (11th Cir.1997); *Wooten v. Campbell,* 49 F.3d 696, 700 (11th Cir.), cert. denied, 516 U.S. 943, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995).

——, 120 S.Ct. 2657, 147 L.Ed.2d 272 (2000); *Garcia–Mir v. Meese,* 788 F.2d 1446, 1449–1452 (11th Cir.1986). In this case, both Florida administrative code and the continuing order of the juvenile court arguably provided such limitations on the discretion of Defendants in terminating Plaintiff's benefits. Taking Plaintiff's allegations as true, Plaintiff has sufficiently stated for purposes of defeating a motion to dismiss that he has a property interest entitled to procedural due process in these foster care benefits and immigration status assistance. Therefore, Plaintiff's allegations meet both requirements for a procedural due process claim and state a claim upon which relief can be granted.

### D. Child Welfare Act

Defendant argues that Plaintiff cannot state a claim for relief under the Child Welfare Act, because the Act does not confer enforceable rights under Title 42 U.S.C. Section 1983 and Defendants have complied with the terms of the Act. Although Plaintiff's Amended Complaint seeks to establish a claim for a violation of 42 U.S.C. Section 675(5)(C), this definitional subsection describing a "case review system" is made a mandatory part of the state plan required by the Act through 42 U.S.C. Section 671(a)(16). Thus, Plaintiff's claim actually seeks to enforce the alleged failure of Florida to follow a particular requisite feature of the federally required state plan described in Section 671.

█ A plaintiff seeking Section 1983 redress must assert the violation of a federal right, not merely a federal law. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). Three principal factors determine whether a statutory provision creates a privately enforceable right:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms. (Citations omitted.)

*Doe 1–13 By and Through Doe, Sr. 1–13 v. Chiles,* 136 F.3d 709, 713 (11th Cir.1998); See also *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).

In *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court restricted the holding in *Wilder* and held that Congress did not unambiguously confer upon the child beneficiaries of the same Child Welfare Act a right to enforce 42 U.S.C. § 671(a)(15), which required states to make reasonable efforts to maintain and reunify families, another part of the same plan involved in the instant case. Two years later, Congress revised the Child Welfare Act and enacted 42 U.S.C. Section 1320a–2, which overturned the *Suter* decision as the grounds for denial of private enforceability, but did not itself create a right of private action under any provision of the Child Welfare Act. Plaintiff urges this Court to follow *Marisol A., By Next Friend Forbes v. Giuliani,* 929 F.Supp. 662, 682–83 (S.D.N.Y.1996), wherein the court read the 1994 anti-*Suter* Amendment as Congress' intent to apply pre-*Suter* case law to determine private enforceability of the Act and stated that the court must apply the factors set forth in *Wilder* to decide whether plaintiffs are entitled to pursue their claims under Section 1983. However, the Eleventh Circuit has rejected the "rewind the clock" to pre-*Suter* caselaw view expressed in *Marisol. Harris v. James,* 127 F.3d 993, 1002–03 (11th Cir.1997)("We reject this argument on the basis of the plain language of the statute... Section 1320a–2 does not purport to reject any and all grounds relied upon in *Suter*; it purports only to overrule certain grounds—i.e., that a provision

is unenforceable simply because of its inclusion in a section requiring a state plan or specifying the contents of such a plan."). The Eleventh Circuit further stated that *Wilder* and *Suter* (except the conclusion that State-plan requirement statutes are a fortiori unenforceable under Section 1983) remain good law.

In analyzing whether 42 U.S.C. § 675(5)(C) and 42 § 671(a)(16) provides a private right of action, the Court notes that no published decisions regarding these provisions have found a private right of action. However, in applying the *Wilder* test to this statute, using *Harris v. James* as a guide,[5] the Court concludes that Plaintiff is an intentional beneficiary under these provisions, which require a case review system including various procedural safeguards. Second, the terms of these two provisions are not so "vague and amorphous" that their enforcement would strain judicial competence. Unlike the "reasonable efforts" language in *Suter*, in this case the requirements needed to form a "case review system" described in Section 675(5)(C) are fairly specific in that a judge can determine whether a state plan contains such a system. Finally, Section 671 of the Act unambiguously imposes a binding obligation on the States if they accept federal funds. Thus, it is clear that Congress intended to impose a specific requirement on states that would specifically benefit foster care children such as Plaintiff.

Taking all of the allegations in Plaintiff's Amended Complaint as true, this Court concludes that Plaintiff has stated a claim under Sections 675(5)(C) and Section 671(a)(16) and can withstand the instant motion to dismiss. The Defendants' arguments that Florida has met the requirements of the "case review system" in this case go to the merits of Plaintiff's claim

and are thus better suited to determination after discovery on a motion for summary judgment.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint [DE 25] is hereby **GRANTED IN PART** as to Count I of the Amended Complaint, and **DENIED IN PART** as to Counts II, the procedural due process claim, and Counts III, the Child Welfare Act claim;

2. Count I of the Amended Complaint is hereby **DISMISSED** for failure to state a claim;

3. Defendants shall answer the Complaint no later than August 25, 2000.

---

**5.** The Court notes that *Harris v. James* involved claims of Section 1983 violations of federal regulations implementing a statute. The Eleventh Circuit held that in such a case Congressional intent of unambiguously creat-

ing a right is difficult to show; the regulations must define the content of any specific right conferred upon the plaintiffs by Congress itself. *Harris,* 127 F.3d at 1009–1010.